UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA,      )
                                 )
        Plaintiff,          )
                                 )  Criminal Action
v.                           )  No. 4:25-cr-40015
                               )  Pages 1 to 34
MATTHEW LANE,               )
                                 )
        Defendant.          )
                                 )

BEFORE THE HONORABLE MARGARET R. GUZMAN
UNITED STATES DISTRICT JUDGE

SENTENCING HEARING

October 14, 2025
11:00 a.m.

Harold D. Donohue Federal Building and U.S. Courthouse
Courtroom No. 2
595 Main Street
Worcester, Massachusetts

Jessica Leonard, CSR, FCRR
Official Court Reporter
United States District Court of Massachusetts
595 Main Street
Worcester, MA 01608
Jessica@wickedsteno.com

APPEARANCES:

On Behalf of the Government:

    UNITED STATES ATTORNEY'S OFFICE
    By: Kristen A. Kearney
    1 Courthouse Way
    Suite 9200
    Boston, MA 02210
    617-748-3204
    Kristen.kearney@usdoj.gov


On Behalf of the Defendant:

    RUDOLF SMITH
    By: Sean Smith
    446 Main Street
    Suite 1503
    Worcester, MA 01608
    508-425-6330
    Smith@rudolfsmith.com

Proceedings reported and produced
by computer-aided stenography.

**P R O C E E D I N G S**

THE CLERK:  This is Criminal Action No. 4:25-cr-40015, *United States v. Matthew Lane.*

Counsel, please note your appearance for the record beginning with the Government.

ATTORNEY KEARNEY:  Good morning, Your Honor, Kristen Kearney for the United States.

THE COURT:  Good morning.

ATTORNEY SMITH:  And good morning, Your Honor.  Sean Smith on behalf of Mr. Lynn.

THE COURT:  Good morning.

And Mr. Smith, I'm going to swear you in right now. Raise your right hand, please.

ATTORNEY SMITH:  Mr. Lane.

THE COURT:  I'm sorry, I apologize.

(The defendant was sworn.)

THE COURT:  You may have a seat.

We also have a representative from Probation.  Could you identify yourself for the record?

U.S. PROBATION:  Good morning, Your Honor.  Ashley Berry for U.S. Probation.

THE COURT:  Thank you very much to everyone.  Good morning, and good morning Mr. Lane.

Do you understand that today is your sentencing hearing?

THE DEFENDANT:  Yes, I do, Your Honor.

THE COURT:  I want to remind you, now that you have been sworn in, you are under oath.  Answers to the questions that I pose to you need to be truthful.  If the Government believes that you have provided substantive false information, they could prosecute you for perjury, so please be aware of that.

If any of the questions that I ask you are confusing or you just wish -- in order to answer it you need to speak with Attorney Smith, you just let me know and we'll give you that opportunity.  If there is a significant discussion you need to have, we can even provide you with a private place in which to have that conversation.  You just need to let me know.

So this is how this hearing is going to proceed today.  I'm going to have a conversation with Mr. Lane to assure that he is competent to proceed in today's hearing.  I will then walk through the procedural history of the case against Mr. Lane and the documents that I have considered in advance of today's hearing.  I will make my final factual U.S. sentencing guidelines determinations.  I will then hear sentencing arguments from both sides, and if Mr. Lane wishes to exercise this right, he may make an allocution statement.

Finally, the Court will proceed to sentence Mr. Lane.  We will then conclude by ironing out administrative details.

Mr. Lane, we last saw each other when you waived your

indictment and pled guilty before the Court on June 6, 2025. Do you recall that?

THE DEFENDANT:  Yes, I do, Your Honor.

THE COURT:  During that hearing, we discussed how this was a plea agreement which came with a recommended sentence from the U.S. Attorney's Office.  We call those B pleas.  That means that even though I have accepted your plea, I have discretion to sentence you at or above or below the recommended sentence as long as my sentence is reasonable.  Do you understand what I have just explained?

THE DEFENDANT:  Yes, I do, Your Honor.

THE COURT:  I'm going to ask you a series of questions.  The purpose of that is to determine if you are competent to engage in today's proceeding.  How old are you?

THE DEFENDANT:  I'm 20 years old, Your Honor.

THE COURT:  How far did you go in school?

THE DEFENDANT:  I went to freshman year at Assumption University.

THE COURT:  So you graduated from high school?

THE DEFENDANT:  Yes.

THE COURT:  Can you read, write, and understand English?

THE DEFENDANT:  Yes, I can, Your Honor.

THE COURT:  Are you taking any drugs or medication or had any alcoholic beverages in the last 24 hours that might

affect your judgment today?

THE DEFENDANT:  No, I have not, Your Honor.

THE COURT:  Have you been recently under the care of psychiatrist for anything that would affect your ability to understand what is going on in court today?

THE DEFENDANT:  No, I have not, Your Honor.

THE COURT:  Have you had sufficient opportunity to discuss this case and the sentencing that is going to occur with Attorney Smith?

THE DEFENDANT:  Yes, I have, Your Honor.

THE COURT:  Are you satisfied with the job that he has done in representing you in this case?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  The key facts regarding this case are as follows:

On May 20, 2025, an information was issued against Mr. Lane charging him on four counts.  Count 1, cyber extortion conspiracy in violation of 18 U.S.C., Section 371; Count 2, cyber extortion in violation of 18 U.S.C., Section 1030; Count 3, unauthorized access to protected computers in violation of 18 U.S.C., Section 1030; and Count 4, aggravated identity theft in violation of 18 U.S.C., Section 1028A.  And an information also contains a forfeiture allegation.

On June 6th, in this courtroom, Mr. Lane waived indictment against him and entered a plea of guilty to the four

counts of the information.  In light of that guilty plea, the Court then ordered the probation department to prepare a Presentence Investigation Report, which we will refer to as the PSR.

The relevant sentencing-specific documents that I have reviewed in advance of today's hearing -- and ask counsel to please inform me if they believe I have missed anything.

First, I have before me the probation department's PSR which was originally drafted on July 31, 2025, and then subsequently revised on August 28th and October 6 of 2025.  The PSR was timely shared with the parties.

Second, I have reviewed the Government's sentencing memorandum and two victim impact statements.

Third, I have received Defense Counsel's sentencing memorandum, reviewed it along with several letters of support that were submitted by Mr. Lane's friends and family.

Fourth, I have reviewed the plea agreement between the parties.

Finally, I have reviewed the Government's motion for forfeiture and its proposed orders.  In terms of sentencing-related documents, is there anything that I should have received and reviewed but not listed?  Please let me start with the Government.

ATTORNEY KEARNEY:  No, Your Honor.

THE COURT:  Attorney Smith?

ATTORNEY SMITH:  No, Your Honor.

THE COURT:  To Probation, was anything withheld from the PSR?

U.S. PROBATION:  No, Your Honor.

THE COURT:  I want to give all the parties an opportunity to lay out any objections that they have to the PSR.

Attorney Smith, have you personally reviewed the entire PSR?

ATTORNEY SMITH:  I have reviewed the entire PSR.

THE COURT:  Have you had the opportunity to review it with your client?

ATTORNEY SMITH:  I have.

THE COURT:  And are there any objections to the PSR?

ATTORNEY SMITH:  Not to the final PSR.

THE COURT:  And Mr. Lane, do you feel as though you've had sufficient opportunity to review the PSR?

THE DEFENDANT:  Yes, I have, Your Honor.

THE COURT:  And do you need any further opportunity to discuss anything contained within that or its implication with Attorney Smith?

THE DEFENDANT:  No, Your Honor.

THE COURT:  Is there anything in the PSR that you believe is inaccurate?

THE DEFENDANT:  No, Your Honor.

THE COURT:  Thank you.

Counsel, I understand the Government has no objections to the PSR?

ATTORNEY KEARNEY:  Correct, Your Honor.

THE COURT:  All right.  Thank you to all of you.

I will now turn to issues that were raised relative to the PSR.  First, the Court hereby accepts the factual statements contained in the PSR.  Second, as to the topic of applicable U.S. sentencing guidelines, I'm going to make the following recognition.

First, with respect to offense level, I have reviewed probation department's calculations and make the following findings:

Count Group 1, which is Counts 1 and 2, cyber extortion conspiracy.  Based on the substantive offenses in this case, the Court finds Mr. Lane's base offense level is 18.  Two points are added because the amount demanded or the loss to the victim exceeded $20,000.  Two points are added because Mr. Lane used a special skill to facilitate the offense.  Therefore, his adjusted level for Counts 1 and 2 is 22.

Count Group 2, which is Count 3, unauthorized access to protected computers.  Based on the substantive offenses in this case, the Court finds that Mr. Lane's base offense level is 6.  20 points are added because the loss exceeded $9.5 million but was less than $25 million.  Two points are added

because Mr. Lane used sophisticated means, two points are added because the defendant was convicted under an offense 18 U.S.C. 1030, and the offense involved an attempt to obtain personal information.  Two points are added because Mr. Lane used a special skill to facilitate the offense.  Therefore, his adjusted offense levels for Count 3 is 32.

The combined adjusted offense level for Counts 1 and 3 is 32.  Two points are deducted for Mr. Lane's acceptance of responsibility.  One point is deducted for Mr. Lane's notification of his plea of guilty.  Two points are deducted because Mr. Lane qualifies as a zero-point offender. Therefore, his adjusted offense level for Counts 1-3 is 27.

Count Group 3, which is Count 4, aggravated identity theft.  The guideline for 18 U.S.C., 1028A(a)(1) offense is found in the U.S. sentencing guidelines 2B1.6.  That section directs that the guideline sentence is the term of imprisonment required by statute.  Therefore, the term of imprisonment is 24 months to run consecutive to any other term of imprisonment imposed.

This means that Mr. Lane faces a guideline sentence of 94 to 111 months in custody followed by one to three years of supervised release.  To be clear, the Court acknowledges that the U.S. sentencing guidelines are advisory and it also does not take for granted that a given guideline provision would necessarily be reasonable in this case.

Starting first with the Government, are there any objections to the Court's ruling relative to the PSR?

ATTORNEY KEARNEY:  No, Your Honor.

THE COURT:  Attorney Smith?

ATTORNEY SMITH:  No, Your Honor.

THE COURT:  Before I render the sentencing decision, I'm going to provide Attorney Smith with an opportunity to speak on Mr. Lane's behalf.

ATTORNEY SMITH:  Your Honor, Mr. Lane is asking this court for a three-year sentence of incarceration to be followed by three years of probation.  This is a significant southward departure from the guidelines, as you just stated.  And this is not to minimize at all the behavior, the criminal conduct, the harm to the victims, and it's not to minimize the loss. Mr. Lane is very much cognizant of the damage he has done and the seriousness of the case before him.  He's recognized his culpability almost from the start.

This is a case -- as Your Honor stated, there was a plea agreement in June to the information, a waiver of indictment.  Mr. Lane did not avail himself of his right to go through a protracted legal process to stretch out this case. He came forward and admitted fault almost from the get-go. This is an individual who's cooperated with law enforcement, cooperated with the Government, been here ready and able and fully understanding of the severity of the situation.

None of this recommendation is to minimize the damage. And I believe you will hear in his allocution he takes full responsibility. These are serious crimes. It is a serious sentence recommendation. Three years for a man -- a young man such as Mr. Lane, who is 20 years old who, as you'll see through the PSR, much of the conduct was when he was a teenager. He was a teenager through much of the majority of his offending and this is a serious sentence for someone so young like Mr. Lane.

He has no prior record. As you saw in his PSR, his category history is I. No prior allegations, no prior acts of violence, no other history than this conduct here today. He has no violations on his pretrial conditions of release. Since his plea, the Court conditions, he has not violated any of them. He attends counseling, he does so once a week. He also has stayed completely away from the internet, access to social media. He has done all of that knowing full well the seriousness of this case, knowing full well the damage that he has caused and the importance that he do so, that he can follow those types of court orders.

Three years prison and followed by three years of probation is what will satisfy the conditions of sentencing. The goals of sentencing will be satisfied by those three years regardless of the departure southward.

This is an individual who has no prior history of

being incarcerated or detained.  This young man has not -- when it comes to considering and conceptualizing punishment, when it comes to punishing an individual, he's never so much spent a day in custody, a day in jail.  This is not as if he's got a history ramping up in terms of time at the house of correction, time spent in prison.  This is going to be a tremendous, damaging shock to him, one that he is very cognizant of.  He recognizes he's going to do federal prison time and he's going to see a significant sentence of at least three years.

He has had to do this while enduring and watching the damage he's done not only to the victims named in this case and the damage he's caused all of them and the loss of money, he's done so with his whole family, knowing full well what their son, what their brother, what their nephew -- what he's done. He's had to come and be clear with them.  And many of them are in the courtroom, many of them wrote those letters of support.

And you will see time and again if there's a theme in those letters of support, it's heartbreak.  It's heartbreak that Mr. Lane has caused them and that he has suffered through putting them through all of that.  He has been there and he has had to take it because that is what the damage has done to the family as well.

And this is clearly a case of public notoriety.  He is -- his name, his actions are not something that is secret. It is well within the public space.  This is not something that

he can easily forget, run away from.  He must be punished; he will be punished.  Everyone knows his actions and his behaviors and he will suffer for them.

Three years, however, will also provide him the opportunity of rehabilitation; the opportunity of reform and have a future ahead of him, to be able to do his sentence, to complete that sentence, then move on to probation and still be a relatively young man, to be able to still be able to make progress in his life, to still be able to make the amends necessary, to be able to pay back the damages, to make his life right and get back to a productive life in the future.

Mr. Lane is also very fortunate, as I've already mentioned, to have a great deal of support.  The Government's correct.  In their sentencing memorandum, they talk about that Mr. Lane had a great family and he still has a great family. The letters of support show that.  It's, quite frankly, very impressive, the amount of letters of support and the people who know Mr. Lane so different than what's in the PSR, what's characterized as his behavior and the crimes he committed. He's a loving, generous, patient individual in the letters. The people who know him and have known him for years -- see him in interactions day after day -- know him to be that person.

He's a young man who sometimes has struggled with isolation, loneliness, depression, anxiety.  And that's not to minimize, but that's to show that this is an individual who's

complex, that has a complex role within his family and his community, and that so many people -- knowing full well about this case either through the press or through Mr. Lane or his family or connections or whatnot -- they've all come together and they've written these letters of support for Mr. Lane.  And they will be here when he completes whatever sentence he's given, whatever time of probation he's given, they will be with him to support him to make sure he's able to do the rehabilitation.

The goals of sentencing will be handled with a three-year period of incarceration followed by three years of probation, punishment, deterrence, rehabilitation.  There's -- no additional prison is necessary to ensure that all three goals are satisfied.  And for those reasons and all that are listed in those letters of support, I'm asking Your Honor to consider that three-year incarceration.  Thank you.

THE COURT:  Thank you.

Counsel?

ATTORNEY KEARNEY:  Thank you, Your Honor.

The Government respectfully recommends that a sentence of 84 months in prison comprised of 60 months on Counts 1 through 3 followed by 24 months on Count 4, plus three years of supervised release, restitution of $14,075,540.58, and forfeiture as outlined in the Government's motion for forfeiture is sufficient but not greater than necessary to

satisfy the requirements of Section 3553(a).

In coming from this recommendation, the Government sought to balance the seriousness of the defendant's offenses, harm to his victims, and the need for deterrence against the defendant's personal history and characteristics.

The seriousness of Defendant's offenses and harm he caused cannot be overstated.  As Victim One's impact statement referenced, the ultimate victims of Defendant's extortion were Victim One's employees -- mothers and fathers, individuals new to their career, and individuals with decades of experience, all of whom did not deserve to be deprived of time with their family or face unnecessary anxiety and a fear that Mr. Lane would act on his threats.

The ultimate victims of the extortion of Victim Two are even more compelling.  To be sure, Victim Two's very existence was threatened, along with the jobs of thousands of its employees and their livelihoods.  But the defendant also put at risk the security of 60 million children and 10 million teachers.

The impact of this kind of identity theft is broad -- not just ruined credit, but it also affects future job prospects, the accuracy of medical records, even insurance costs.  Even with identity protection, this violation of their personal information will haunt these victims for the rest of their lives.

And for what?  Greed.  The defendant wanted designer clothes and jewelry.  He wanted to host parties at extravagant AirBNBs, and he needed to fund his daily marijuana habit.  As his own messages make clear, he did it for the money.  At the same time, the defendant knew exactly what he was doing and that it was wrong.  His messages discuss avoiding getting caught by the Fed, how to leave no trace for investigators.

Both his computer skills and his criminal skills were sophisticated.  Beyond using a VPN or an eSIM, he knew how to wash cryptocurrency so that it became untraceable.  He researched which companies to target, both those likely to pay and those with the most to lose if their data was leaked.  And he even discussed using virtual credit cards and money mules to avoid detection.

All of these steps showed that the defendant did not make a teenage mistake but engaged in carefully planned attacks.  The charges here arise from two separate incidents in a line of cyber attacks affecting various companies and even foreign Governments.  And where the defendant also discussed targeting additional companies, that demonstrates that his actions were calculated and knowing and not the result of immaturity.

And while the sentencing guidelines do provide for a departure based on age-related factors, none of those factors are present here; The defendant did not get mixed up with the

wrong crowd.  He did not grow up in an environment where crime was the only path available.  And, as demonstrated by each of his letters in support, he did not lack strong family values.

In fact, those letters make it seem as if the defendant was living a double life.  He is polite and respectful in front of his family and friends, but then when he gets behind a computer screen, he's a different person.  His chats show that he uses racial slurs, anti-Semitic language, threatened sexual violence all while planning and carrying out multiple sophisticated cyber attacks and extortions.

The defendant's sentencing memorandum also places some of the blame on his anxiety at feeling that he didn't fit in at school.  But anxiety and not fitting in is something experienced by everyone who's gone through middle school, high school, even college.  And the majority of those people do not commit crimes to deal with their anxiety, and certainly not crimes that target children and their teachers and cause more than $14 million in damage.

The defendant's age actually increases his risk of recidivism.  When he was finally caught -- as I noted, it was a connection with two totally separate schemes that were part of a slew of cyber attacks that he had been involved in up to that point.  So while he may have zero criminal history points, this is hardly the first time that he's crossed the line between right and wrong.  He also lied to investigators multiple times

and blamed others for his conduct, which increases the Government's concern that he will re-offend.

The Government cited in its sentencing memorandum the example of Cameron LaCroix.  Like Mr. Lane, that defendant was young and engaged in multiple cyber schemes.  And despite an initial sentence of 48 months in prison, that was not enough to deter him from continuing to engage in cybercrime upon his release from prison and resulted in an additional 24 months in prison for violation of his supervised release.

The 36 months that the defendant has recommended is similarly not enough.  The Government has grave concerns that the defendant and his fellow hacker community will think his crimes are worth it.  What is three years in prison when there's potentially $3 million in cryptocurrency waiting for him when he gets out at 23?  And he also has the skills to keep targeting and extorting companies.

Mr. Lane will still have his life ahead of him when he gets out of prison, even at the Government's 84-month recommendation.  But such a meaningful term of imprisonment will give him sufficient opportunity to reflect on his crimes and the harm to his victims, to participate in mental health and other programming designed to reduce his risk of recidivism, and to deter him from participating in additional cyber crimes when he is released.

And so for these reasons as well as those outlined in

the Government's sentencing memorandum, the Government respectfully recommends an 84-month prison sentence along with the restitution, forfeiture, and supervised release.  Thank you.

THE COURT:  Thank you.  Mr. Lane, you have an opportunity to speak at this time, and your attorney has indicated that you wish to do so.  I just want to remind you, you have no obligation to speak.  If you choose to rely on your attorney's argument on your behalf, that could not be held against you in any way.  But because this is your hearing, I certainly would hear from you if you wish to say anything to the Court.

THE DEFENDANT:  Yes, I would, Your Honor.

THE COURT:  All right.

THE DEFENDANT:  Thank you for allowing me to address the Court and the victims today, Your Honor.

I would like to preface this by taking full responsibility for my crimes and all the turmoil and pain I have caused.  Before the raid on April 29, I had been leading a life of callousness and greed.  I was a nihilist stuck in a fantasy world.  When I was hacking, I was completely disconnected from reality.

I realize now that my actions caused extreme harm to real companies, their employees who are hard-working people, as well as the people whose data were stolen, including teachers

and young children.  I robbed actual people and their families of their sense of security.  I have caused severe devastation to the reputations of the companies, which I realize now you cannot put a price tag on.

When I read the PSR, it genuinely made me sick to my stomach.  Those conversations I had with CC 1 brought me back to an extremely dark time in my life and reminder of my lack of mental fortitude at the time.  I genuinely did not recognize the person that was speaking was me.  The way I spoke about the money and the victims was coldhearted.  I'm fully disgusted with myself and I am truly so sorry.

I know those words cannot take back what I did, and I'll be living with the guilt, shame, and remorse the rest of my life.  My actions also destroyed my family emotionally.  I'm so embarrassed by the shame and trauma I brought to my family, especially my parents, grandparents, my two little sisters who were traumatized by the raid in the house and embarrassed and scared to go back to school.  Instead, they find out their older brother, who they should have been able to look up to, did such horrendous things.

I feel so fortunate that they all still love and support me after everything I've done and everything I've put them through.  But I don't deserve it.  I have to live with what I've done, and the pain my actions have caused will continue to haunt me for the rest of my life.

I know I deserve to be punished.  Deep down, I knew what I was doing was wrong.  The shame and guilt from my behavior started to literally kill me.  I started withdrawing from my family and other relationships which led me down to a path of further isolation I had never experienced before.  At this point I really didn't feel like I could get out of this criminal way of life.  I knew who I was before all this, but I just didn't know how to stop or how to get out of it.  I just knew that this was not who I wanted to be.

To be honest, I'm extremely thankful I got caught.  I feel fortunate that I am finally off of this path of life for good and I know for sure I will never go back.  Since probation, I have been actively attending therapy, which I immensely enjoy, and I've been living a good sober life.  Not only sober from drugs but from the internet as well.  For the first time in six years, I feel like I have my sanity back.

The path to focus on remediating my life and doing everything I can to make up for the terrible, deplorable things I have done is finally visible.  My goal is to make up and own up for it to the devastating impact I've caused the victim companies, their hardworking employees, the real people -- including teachers and the young children -- whose data were stolen, the support engineer of Victim Two, and my family, friends, loved ones, and my own teacher.

I have been really thinking hard about what steps I

can take to better myself.  I hope to finish my college education, because I want to give back to society rather than just take from it.  I know that I can not undo the past.  I wish I could, but I promise I will make it my life's mission to remediate and make up for what I've done for everyone.  Thank you.

THE COURT:  Thank you.  Counsel, are there any individuals that wish to speak?

ATTORNEY KEARNEY:  No, Your Honor.

THE COURT:  All right.  I have read all of the Government's submissions so I am well aware of not only the Government's advocacy on their behalf, but also the particularized statements that they make.

This case and a couple other cases I have had that since sitting on the federal bench have been illuminating about the breadth and reach of technology and the ability to facilitate almost massive amounts of harm and untold amount of illegal gain.

The crimes that I have presided over in trials and hearings and motions are across the spectrum, but the ability to use instant communications in an anonymous way, they take away the facing the beast, whether or not it's going into a bank and robbing it, whether or not it is literally dragging someone behind a building and beating them up, or if it is using language to someone who is bigger than you that you would

be too afraid to say to their face but certainly in the anonymity of the computer, you can say whatever you want and it can be said -- you know, you can add Emojis to give your tone.

The complexity of the world that we live in now, it's not something that can go back. We can't go back to handwriting. We can't go back to typewriters. We can't go back to a TV set with five channels. And we don't want to. We really don't. There are so many things that we've benefitted from from computerization and from advances in all fields.

But we haven't yet learned how we provide our children with today's dangers without teaching them and recognizing ourselves how much we rely on the advances. And we ourselves are not arming our children or informing our children about the dangers that sit out there in the internet.

There is this overwhelming need to be -- to give our children the edge so they have a computer in their room. They have a cell phone on their person. There are kids in grade school that have cell phones, and if they're not protected cell phones, they are amenable to predators looking for them. If the computers are in the room and there are no safeguards on it, the bright or inquisitive child has this access to an entire world, much of which does not have that interest, that child's interest at heart.

And we are responsible for creating this, but means we also have to be responsible for arming our children with ways

to protect themselves from it.  I am not suggesting in any way that this young man is blameless.  He was bright, well raised, well-educated young man.  But the PSR and the other information I have is clear that he is one of those people who would be vulnerable to falling into that rabbit hole.

Through many points in his life he was not advancing in the same physical way as other kids.  He was suffering from numerous times in his life things that required assistance, things that required helping him sort, things that required helping him try and find a way to fit in.  He was vulnerable. It is -- again, it is no way an acknowledgment that that -- that it should be okay that that's where he went.  But we cannot ignore what is obvious.

These actions, whatever -- he is not the first young man or young woman to find themselves exhibiting bravado behind the screen of a computer and he is not going to be the last. It is imperative that we find as a society a way not just to help our children learn and grow and innovate and use computer technology in ways that are helpful to society, but we must also have the responsibility that if we put the computer in their room, the phone in their hand, it's like a gun.  If you don't know how to use it, someone can be harmed.  And we see that all the time.

Mr. Lane, I believe you when you sit here and tell me that you understand and you are gaining a knowledge about the

impact of your actions.  And I think it's important not just to the people who you harmed but to yourself that you acknowledge it in public.  And I think that is an important step that you are taking.

The acts that you engaged in -- and I do really believe that there was an element of almost -- it was more fiction, what you were doing, than it was real.  But you know that now is not the case.  And you are not at such a young age that you couldn't understand the difference between right and wrong.  And society has a very, very important need to know that there are consequences for what we do, individual consequences.

I mean, we can blame society, your parents, the competitive-edge computer companies; we can do all that.  But you hit the strokes; you said the words; you did the deeds. The surest way for you to assure yourself of a happy life, of a future, is to do what you're doing today, which is acknowledging publicly your responsibility for these acts, and the Court accepts that and recognizes that.

I have considered all of the factors that are required by law under Title 18 of the U.S. Code Section 3553.  Based on all of the evidence that I've heard and read, I believe that the sentence that I'm about to impose is appropriate, it recognizes all of the needs in sentencing, whether it is to the individual defendant, to the individuals and the groups that

have been harmed, and to the future hope that this is something that will be something you will not repeat.

Please stand.

As to Counts 1 through 3, I'm going to impose a below-guidelines range of 24 months. That will be served concurrently. And I am going to impose the 24 months to be served on and after, consecutively, for Count 4.

I'm also going to impose the 36 months of supervised release upon your completion of that sentence. I will not impose probation in this case. I am going to adopt the restitution payment amount of $14,075,540.58 to Victims One and Two. I'm going to assess a $25,000 fine. There will be a $400 special assessment which will be due today, and I'm going to grant the Government's motion for forfeiture and the proposed orders.

You may have a seat.

I'm going describe to you, sir, the terms of your sentence.

As to restitution, any payment made that is not payment in full shall be divided proportionally among the parties named. A term of imprisonment imposed upon you in this case. The restitution shall begin immediately and according to the requirements of the federal Bureau of Prisons Inmate Financial Responsibility Program while you are incarcerated. That will control the accumulation and the payment according to

a court-ordered repayment schedule during the term of supervised release.  All restitution payments shall be made to the clerk, the U.S. District Court for transfer to the identified victims.

The defendant shall notify the U.S. Attorney's Office for this district within 30 days of any change in mailing or residential address that occurs while any portion of the restitution remains unpaid.

The Court grants the Government's motion for forfeiture.

I want to talk to you about what happens when you are released from court today.  There will be a period of what is called supervised release.  Upon release from imprisonment, within 72 hours, you must report to the closest location so that you can be registered for your supervised release.  The term of 36 months, which is equal to three years.  You will be under Probation Office's supervision.  You must comply with all terms and conditions, including the following mandatory terms:

You must not commit any federal, state, or local crime.

You must not unlawfully possess a controlled substance.

You must refrain from any unlawful use of a controlled substance and must submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests

thereafter not to exceed 104 tests per year.

You must cooperate in the collection of DNA as directed by the Probation Office.

You shall comply with the standard conditions that will be written in the judgment -- in detail on the judgment of this court.

You must not knowingly have any contact -- direct or indirect -- with Victim One; Victim Two; Employee One; or Co-Conspirator One.

You must participate in a mental health treatment program as directed by the Probation Office.

You must always use your true name and are prohibited from the use of any false identifying information which includes but is not limited to aliases, false dates of birth, false social security numbers, and incorrect places of birth.

You must pay the balance of any fine or restitution imposed according to a court-ordered repayment schedule.

You're prohibited from occurring new credit charges or opening additional lines of credit without approval of the Probation Office while any financial obligations remain outstanding.

You must provide the Probation Office access to any requested financial information which may be shared with the Asset Recovery Unit of the U.S. Attorney's Office.

The installation of a computer or internet monitoring

program on approved devices except computers owned by your employer or not located in your residence must be installed with the installation of computer and internet monitoring program.  The program used will be designed to identify for the Probation Office the use or access of social media, online video games, the dark net, the Tor browser, or any inappropriate or non-academic content.

You must not attempt to remove or otherwise defeat such systems, and you must allow the Probation Office to examine such devices and receive data from them at any reasonable time.  You must advise anyone using the monitored internet-capable devices that these devices are being monitored by the Probation Office.

You shall not possess or use a computer, internet-capable device, or similar electronic device or have access to any online service without the prior approval of the Probation Office.

You may use a computer for work or academic purposes, but only when previously approved by the Probation Office.

You must disclose all account information relative to internet access, social networking, and e-mail, including user names and passwords to the Probation Office.  You must also, if requested, provide a list of all the software, hardware on your computer, as well as telephone, cable, or internet service provider, billing records, and any other information deemed

necessary by the Probation Office to monitor your computer usage.

You shall consent to third-party disclosure to any employer, potential employer, or academic institution in which you enroll concerning any computer or internet-related restrictions that are imposed upon you.

You are prohibited from being employed or volunteering in any capacity that may cause you access or use internet-capable devices without prior approval of the Probation Office.

You may use a computer or internet-capable device solely for academic papers and purposes in connection with your enrollment in classes, must be pre-approved by the Probation Office and only with the prior approval of the Probation Office.

You shall be required to contribute to the cost of evaluation, treatment, programming, and/or monitoring based on the ability to pay or availability of any third-party payment. That's related to Special Conditions Nos. 2 and 7.

You're prohibited from discussing with anyone other than your attorney or a representative of the Government any information that you gained from the victims' computer networks during these offenses and any information about the vulnerabilities of the computers, computer programs, computer networks that were the subject of these offenses unless

specifically authorized by the Probation Office in consultation with the U.S. Attorney's Office.

Mr. Lane, criminal defendants ordinarily have the right to appeal a sentence that is imposed upon them.  However, by entering into the plea agreement, you agreed not to take any appeal of your sentence or your conviction to a higher court. In other words, I'm the last judge in your case, and you are agreeing that you will not be able to overturn the decisions that I make.

The only very limited exceptions may be if you believe you had ineffective assistance of counsel or if evidence later surfaces to show that the prosecutor or law enforcement exhibited misconduct serious enough to warrant your conviction and/or sentence being overturned.

Do you understand all that I have just told you about the appellate rights that you have and give up in exchange for the concessions that the U.S. Attorney's Office has made?

THE DEFENDANT:  Yes, I do, Your Honor.

THE COURT:  You will be provided as much information as you need to give you full information in hand of your general supervision conditions, your specific special conditions, and any other matters related to this sentencing.

I'm going to order that you self-surrenderer to the institution designated by the Bureau of Prisons six weeks from the date of the imposition of this sentence.

Are there any other matters that any other party wishes to bring to the Court's attention today?

ATTORNEY KEARNEY:  Not from the Government, Your Honor.

ATTORNEY SMITH:  Not from the defendant.

THE COURT:  All right.

This sentencing hearing is now adjourned.  I want to thank all of the parties that are here, whether you are here on behalf of the defendant or on behalf of the Government's case.

And I am not -- it is very difficult to have someone whose future was probably very, very bright stand before me knowing that his life is inalterably changed, but it doesn't mean it is forever over.  It means that you get to redefine who you are, Mr. Lane, what you stand for, and what your contribution to this world will be.  So I wish you good luck.

Thank you, Attorney Smith.  Thank you, counsel for the Government.

(Whereupon the hearing was adjourned.)

CERTIFICATE OF OFFICIAL REPORTER


          I, Jessica Leonard, Certified Shorthand Reporter

and Federal Certified Realtime Reporter for the United States

District Court for the District of Massachusetts, do hereby

certify that the foregoing transcript is a true and correct

transcript of the stenographically reported proceedings held in

the above-entitled matter, to the best of my skill and ability.

          Dated this 15th day of January, 2026.




               /s/ Jessica M. Leonard

               Jessica M. Leonard, CSR, FCRR

               Official Court Reporter